# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>[7] JORGE MUNOZ-MARTINEZ,<br><br>Defendant. | Crim. No. 18-344 (ADC) |

## OPINION AND ORDER

Before the Court is Jorge Muñoz-Martínez's ("Muñoz-Martínez" or "defendant") motion for judgment of acquittal. **ECF No. 342**. The government filed a response. **ECF No. 349.**

Having considered all trial testimonies and evidence, the motion at **ECF No. 342** is **DENIED**.

I.  **Procedural Background**

On July 13, 2018 a superseding indictment was filed against defendant. **ECF No. 38.** The superseding indictment charged defendant Muñoz-Martínez along with six other co-defendants in twenty-four counts charging violations to the Racketeer Influenced and Corrupt Act (RICO) (Count 1: citing to 20 racketeering acts), extortion under color of law (Counts 2-5; 8-9, 12, 15, 18), conspiracy to illegally possess narcotics (Counts 6, 10, 13, 16), carrying and use or a firearm in relation to a drug trafficking crime (Counts 7, 11, 14, 17, 21, 23), and possession with intent to distribute narcotics (Counts 19-20, 22, 24). Defendant Muñoz-Martínez was charged in Count 1 violations to 18 U.S.C. § 1862 (RICO violations). Within Count 1, defendant appears named in

Case 3:18-cr-00344-ADC   Document 409   Filed 07/20/20   Page 2 of 8

Crim. No. 18-344-7 (ADC)                                                                                                        Page 2

Racketeering Acts Two: an Extortion conspiracy and Three: extortion. Jury trial against defendant concluded on October 11, 2019. After two and a half hours of deliberations, on October 11, 2019, the jury returned a verdict finding defendant guilty as charged in Count 1. **ECF No. 332**.

On October 22, 2019, defendant filed a motion requesting an extension of time to file a Rule 29 motion for acquittal.[1] **ECF No. 335**. The Court granted the extension and ordered the filing of the motion for acquittal on or before November 25, 2019. **ECF No. 339.** On December 2, 2019, defendant filed his motion for acquittal. **ECF No. 342**. The government opposed. **ECF No. 349.**

**A. Defendant's Request**

Defendant Muñoz-Martínez alleges that the evidence presented at trial failed to establish, beyond reasonable doubt, the elements of the offense charged in Racketeering Act Two. **ECF No. 342** at 4. In support, defendant argues that the testimony presented by Michael Santiago-Figueroa ("Santiago-Figueroa"), a government witness and victim of the corrupt act charged, failed to establish that Muñoz-Martínez was directly responsible for taking and stealing a gold chain from the victim. More so, defendant argues that the witness was only able to establish that defendant was one among 7 or 8 other police officers that participated in the search of Santiago-Figueroa's residence. Defendant also asserts that he had no knowledge of the crime nor did he participate in such act.

---

[1] Rather than denying the motion as untimely, the Court has elected to address the issue raised.

Case 3:18-cr-00344-ADC Document 409 Filed 07/20/20 Page 3 of 8

Crim. No. 18-344-7 (ADC) Page 3

### B. Government's response

The government, in opposing defendant's motion, in essence argues that a "racketeering activity" by definition includes "any act or threat involving... extortion... which is chargeable under state law and is punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). The government also cites to the trial testimony of Santiago-Figueroa, the victim of corrupt police actions and co-defendant Eidderf Ramos-Ortíz ("Ramos-Ortíz"), a former police officer and co-defendant, who testified, among other things, as to the stealing of a gold chain during the execution of a search warrant at the residence of Santiago- Figueroa.

## II. Legal Standard

Rule 29 of the Federal Rules of Criminal Procedure permits a court to "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." *Id*. R. 29(c)(1). "A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." *Id*. R. 29(c)(3).

In reviewing a Rule 29 motion, a court considers the evidence "in the light most favorable to the government." *United States v. Gómez-Encarnación*, 885 F.3d 52, 55 (1st Cir. 2018). "The verdict must stand unless the evidence is so scant that a rational factfinder could not conclude that the government proved *all* the essential elements of the charged crime beyond a reasonable doubt." *United States v. Fernández-Jorge*, 894 F.3d 36, 2018 WL 3118342, at *2 (1st Cir. 2018)

Case 3:18-cr-00344-ADC   Document 409   Filed 07/20/20   Page 4 of 8

**Crim. No. 18-344-7 (ADC)**                                                                                         **Page 4**

(emphasis in original) (citation and internal quotation marks omitted). Thus, the analysis under Rule 29 "begin[s] by considering whether any rational fact-finder could have concluded beyond a reasonable doubt that" the defendant committed each element of the offense for which he was convicted. *Id*. at 3.

### III.   Analysis

Under 18 U.S.C. § 1962(c)

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

As such, the government had to establish beyond reasonable doubt, five elements: 1) the existence of an enterprise as charged in the indictment, 2) that the enterprise engaged in or its activities affected interstate or foreign commerce, 3) that the defendant was associated with the enterprise, 4) defendant knowingly participated, directly or indirectly, in the conduct of the enterprise, and 5) that defendant knowingly participated in the conduct of affairs of the enterprise through a pattern of racketeering activity.

Defendant does not dispute the evidence as to the first four elements. Thus, defendant relies on the alleged lack of evidence pointing to his knowledge and direct participation in racketeering acts. Defendant's request and arguments fail in several very important aspects. First, the statute provides for defendant's liability for "knowing" acts that he engages whether directly or indirectly. The evidence at trial established defendant knew and participated of corrupt actions

Case 3:18-cr-00344-ADC   Document 409   Filed 07/20/20   Page 5 of 8

Crim. No. 18-344-7 (ADC)                                                                                                    Page 5

of officers members of the Caguas Drug Unit and that he also had direct participation in several of those acts.

Second, defendant's argument fails to consider the complete trial testimony of Santiago-Figueroa, who was subjected to a search of his residence on May 18,2015. Santiago-Figueroa narrated that on said date around 7 to 8 police officers searched all areas within his house for over a two-hour period after which he was arrested and taken to the police station. Defendant Muñoz-Martínez was among the officers searching the premises and as such was identified in open court. After his arrest, Santiago-Figueroa was released and was never criminally charged. Upon returning to his house, he noticed that a watch, a gold chain, some pills, and cash was missing. The chain had been seized from a tool box and the cash from a dresser´s drawer. *See* **Exhibits 10, 10B, 13 and 13A**. The pills were medications previously prescribed to Santiago-Figueroa's wife. Santiago-Figueroa testified that while at the police station he was given a receipt for the monies seized, however the amount reflected within the receipt was significantly less. Reportedly, the day after the search, Santiago-Figueroa went to the police station and filed a complaint for the missing property.

Third, defendant failed to consider the trial testimony of do-defendant Ramos-Ortíz. Ramos-Ortíz testified that he joined the police force in 2004 and the Caguas Drug Unit in 2012. Until then, he had not engaged in corrupt actions. Upon arrival to the drug unit, he noticed that engaging in corrupt acts "was very normal," that during searches or interventions you would "keep monies, weapons, drugs for re-sale. Also, it was normal to submit false information in

Case 3:18-cr-00344-ADC   Document 409   Filed 07/20/20   Page 6 of 8

**Crim. No. 18-344-7 (ADC)** **Page 6**

support of search warrants." Based on his testimony, approximately 90% of the search applications affidavits contained false information regarding the surveillance and the criminal conduct alleged. When asked to explain how they would steal monies during the execution of a search warrant, Ramos-Ortíz explained that when monies were found during a search, there was usually one officer searching and a second one assisting. If there were cameras in the place they would "either turn the cameras around or got out of the way."

According to Ramos-Ortíz, most of the agents within the Caguas Unit and certainly those agents within his team acted under the same agreement and understanding where either stolen monies or monies obtained from items stolen and later sold, was later to be distributed among those that had participated on the search. At times, the individuals subject to these robberies were criminally charged in state court and at times, after taking the weapons, drugs or monies from them, they were let go and never charged. Ramos-Ortíz identified defendant Muñoz-Martínez as one of the agents within his "little group." In regards to the search of the residence of Santiago-Figueroa, Ramos-Ortíz narrated they wanted to search the premises because it was known to them that Santiago-Figueroa was dealing in drugs. He was asked by defendant Muñoz-Martínez to assist in the search of the apartment. While both were searching, Muñoz-Martínez was standing close to the door while Ramos-Ortíz searched the contents of a tool box. He found a black bag with a gold chain within and informed Muñoz-Martínez. At that time, it was Muñoz-Martínez who told Ramos-Ortíz "take it" (in Spanish "cógela"). As per Ramos-Ortíz' trial testimony, he took the gold chain and gave it to Muñoz-Martínez.

Case 3:18-cr-00344-ADC   Document 409   Filed 07/20/20   Page 7 of 8

Crim. No. 18-344-7 (ADC)                                                                                                    Page 7

Days after the search and in making reference to the gold chain, Ramos-Ortíz narrated, he recalled being called by Muñoz-Martínez to a hallway. There, after greeting each other, Muñoz-Martínez gave him some cash, proceeds of the sale of the gold chain. While giving him the money, Ramos-Ortíz recalled that Muñoz-Martínez had told him "this is for you to see how I do things."

Evidently, there was direct evidence concerning defendant's knowledge of the corrupt acts being conducted by him and other members of the Caguas Drug Unit. Moreover, the stealing of the gold chain from the residence of Santiago-Figueroa was conducted not only with defendant´s knowledge but under defendant´s direct instructions. Based on the trial testimony of Ramos-Ortíz, which the jury opted to credit, it was Muñoz-Martínez the one responsible for keeping, selling, and sharing the proceeds of the stolen property. All actions executed by both, Muñoz-Martínez and Ramos-Ortíz under color of law and while executing official business.

A fourth aspect that defendant fails to address while raising the insufficiency of the evidence argument, is the evidence presented at trial concerning several instances, at least six events, establishing uncharged conduct that took place during relevant the periods of time charged within the indictment in which, as per the testimony of participating co-defendants—Muñoz-Martínez was an active participant of other corrupt actions. The cooperating co-defendants and

Case 3:18-cr-00344-ADC  Document 409  Filed 07/20/20  Page 8 of 8

**Crim. No. 18-344-7 (ADC)** **Page 8**

co-participants were: Ramos-Ortíz (co-defendant no. 1), Christian Rodríguez-Cruz (co-defendant no. 3) and Erick Velázquez-Martínez (co-defendant no. 4).[2]

## IV. Analysis

Having reviewed the record and the trial testimony of cooperating co-defendants and other witnesses, defendant's motion at **ECF No. 342** is **DENIED**. The jury received overwhelming and detailed evidence, which was corroborated, and the jury could and did reasonably chose to credit.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 17th day of July, 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[2] There was testimony as to the execution of a search warrant wherein defendant Muñoz-Martínez and another officer directly misappropriated of an electronic device (an ipad) that defendant Muñoz-Martínez wanted to keep for his daughter, but was subsequently sold and proceeds were split.